**UNITED STATES DISTRICT COURT**

**For The Eastern District of Wisconsin**



U.S. District Court
Wisconsin Eastern

OCT 2 0 2025

Michelle-Marie Hughes,

Plaintiff,

25 -C- 1 603

v.                                          Case No. _____

Bank of Deerfield, et al.,

Defendants.

### Claim for Damages and Injunctive Relief

(Trial By Jury Demanded)

## I.    Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to:

    a.    **15 U.S.C. § 1601 et seq.** (Truth in Lending Act),

    b.    **15 U.S.C. § 1681p** (Fair credit Reporting Act),

    c.    **15 U.S.C. § 1692k(d)** (Fair Debt Collection Practices Act), and

    d.    **28 U.S.C. § 1331** (federal question), as the claims arise under

    federal law.

2. Venue is proper in this District pursuant to **28 U.S.C. § 1391(b)**

    because the Defendant conducts business in this District, Plaintiff

1

resides in this District, the property is located in this District, and the events giving rise to this claim occurred within this District.

## II.  Status of the Parties

3.  Plaintiff, **Michelle-Marie Hughes ("Beneficiary" or "Plaintiff"),** is a natural person, *sui juris,* and real party in interest domiciled in Wisconsin. Plaintiff appears in her capacity as Beneficiary and equitable owner of the trust res associated with the property at issue. Plaintiff asserts rights secured under the Constitution and laws of the United States and Wisconsin.

4.  Defendant, **Bank of Deerfield ("Defendant" or "the Bank"),** is a statutory financial institution organized and operating under the laws of Wisconsin, operating for profit, extension of credit, collection of debts, credit reporting, recording liens, and engaged in commerce.

5.  Defendant is an artificial person, a corporate entity created by staute, and therefore subject to federal statutes and regulations including, but not limited to: the Truth in Lending Act, 15 U.S.C. § 1601 et seq., the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., as well as other applicable state and federal laws.

6. At all times relevant, Defendant acted in a commercial capacity for profit and in the furtherance of corporate interests, not in the capacity of fiduciary trustee for the benefit of the Beneficiary.

## III. Nature of the Claim

7. This is an action at law and in equity brought by the Beneficiary to remedy harm arising from trespass, fraud, commercial deception, breach of fiduciary duty, and breach of contract by Defendant Bank.

8. Defendant, through the use of fraudulent instruments, material misrepresentations, concealment of facts, and inaccurate disclosures under the Truth in Lending Act (TILA), deprived the Beneficiary of her home, destroyed her credit standing, inflicted reputational and financial injury, and caused personal harm in breach of its fiduciary obligations.

9. The claim centers on the fact that no true loan or risk was ever extended by Defendant. Instead, the Bank drew upon the Principal (the trust res) for its own profit and gain. Monthly "payments" demanded by Defendant were not lawfully owed but constituted improper interest extractions and double-dipping practices, amounting to embezzlement and unjust enrichment.

3

10. This action seeks redress for trespass on Beneficiary's rights and property, violations of consumer protection laws, destruction of credit, unlawful foreclosure, and fraud in commerce. Plaintiff demands trial by jury under the Seventh Amendment and common law to hold Defendant accountable and obtain just remedy for the injuries suffered.

11. To fully appreciate the scope of the trespass and commercial fraud committed against Plaintiff, it is necessary to set forth the factual background of how her home – her constitutionally protected castle and place of refuge – was unlawfully seized through foreclosure proceeding conduct without lawful standing or jurisdiction.

IV.    **Statement of the Case/Factual Background**

12. Plaintiff executed a **consumer credit application** in connection with the purchase of a 1992 Schult 16 x 80 mobile home. Plaintiff's application, together with her wet-ink signature constituted collateral security from which Defendant created credit. See 12 U.S.C. §§ 411-412 and Federal Reserve Act, Section 16, (Part One and Two).

13. Plaintiff's social security number was the "**substance**" of the application that gave the Defendant access to her credit, and Plaintiff's **signature converted the application into a negotiable instrument - an asset** Defendant could sell, assign, or pledge for liquidity.

4

14. Defendant used Plaintiff's asset as collateral to obtain Federal Reserve Notes (FRNs). By attaching Plaintiff's collateral security to its Federal Reserve **Operating Circular 10 (OC-10)** and submitting it to the Federal Reserve Discount Window, Defendant received Federal Reserve Notes equal to the credit amount requested. As provided in 18 U.S.C. § 8, Federal Reserve Notes are obligations of the United States.

15. Plaintiff, as Grantor, Creditor, and Beneficiary, never borrowed from the Defendant. Instead, Defendant, acting as **Borrower and Trustee,** borrowed against Plaintiff's credit. By providing her NAME, SSN, and wet-ink signature, Plaintiff furnished the substance of credit belonging to her Estate, thereby granting Defendant limited authority to act.

16. Defendant thus owed Plaintiff, as Beneficiary, a fiduciary duty in connection with the use of her application as an **asset** that was pledged and borrowed against through the Federal Reserve System.

17. This fiduciary duty is further confirmed in 12 U.S.C. § 1431 (providing that banks are borrowers responsible for paying interest), and 15 U.S.C. § 1602(i), (defining "consumer" as the natural person extending credit for personal, family, and household purposes).

5

18. Defendant nevertheless induced Plaintiff into signing a mortgage contract knowing the financial obligation had already been satisfied by Plaintiff's application.

19. Defendant failed to provide full disclosure and omitted material facts. The Truth in Lending Act (TILA) disclosures contained materially inaccurate figures for the annual percentage rate (APR), monthly payment amounts, finance charge, and total payments made over the course of the loan. Defendant also inserted an unlawful ballon payment as the final installment and failed to account for Plaintiff's $10,500.00 cash down payment, evidencing an intent to misrepresent the true financial obligation and to foreclose on Plaintiff's property. (See Exhibits A, E.)

20. On **October 14, 2022,** Defendant induced Plaintiff into executing a promissory note and mortgage contract under duress. Defendant then used the contract to:

   o **Obtain a security interest in Plaintiff's property;**

   o **Record a frivolous lien on her title;**

   o **Issue inaccurate TILA disclosures; and**

   o **Collect a cash down payment of $10,500.00 that was never properly credited and could have been added to the finance charge pursuant to 15 U.S.C. § 1605.**

6

21. Defendant unlawfully converted Plaintiff's promissory note into a negotiable instrument and pooled it into securitized trusts for profit without Plaintiff's knowledge or consent. At the time of execution, Plaintiff signed the note in blank, believing it to be a standard loan instrument, and was not advised that her signature converted it into bearer paper eligible for securitization. Defendant failed to provide full disclosure of this material fact, thereby depriving Plaintiff of the opportunity to apply a special endorsement or restrictive endorsement ("without recourse") that would have prevented securitization of her note.

22. Plaintiff served Defendant with sworn affidavits detailing these allegations. Defendant failed to rebut any point of fact, and by its silence, acquiesced to Plaintiff's statements, which now stand as unrebutted truth.

23. Plaintiff signature on the promissory note was equivalent to cash. The note was a security and an asset that the Defendant sold for profit. This material fact was never disclosed to Plaintiff which constitutes fraudulent conversion and securities fraud, directly impairing Plaintiff's equitable rights and beneficial interests.

24. When the note was sold, the buyer paid its value, and the ownership of the receivable shifted to the assignee by way of an assignment form.

25. The assignment form is worded as a true sale, transferring "all rights, title, and interest," thereby transferring ownership of Plaintiff's asset for Defendant's gain. This evidences that Defendant never held a valid lien against the property, and the lien placed against Plaintiff's property is fraud.

26. Defendant converted Plaintiff's private family purchase into an investment instrument, thereby making Plaintiff the Principal/Investor, entitled to receive the monthly interest payments as evidenced by the positive account balance. Instead of remitting those interest payments to Plaintiff, Defendant concealed the account activity and misappropriated funds by directly withdrawing from Plaintiff's savings account – even after being served with a cease-and-desist notice.

27. Defendant failed to provide Plaintiff with periodic billing statements as required by the Truth in Lending Act, 15 U.S.C. § 1637(b), and the Wisconsin Consumer Act, Wis. Stat. § 422.305. These statutes mandate that The Defendant furnish Plaintiff with regular written

8

statements reflecting transactions, amounts due, finance charges, and Plaintiff's rights as a consumer.

28. By withholding these statements, Defendant deprived Plaintiff of the ability to verify the alleged debt, calculate finance charges, and exercise her statutory rights, including the right of rescission. This concealment constitutes a material nondisclosure.

29. Defendant did not produce a statement until 2025, when Plaintiff requested a payoff statement. Plaintiff endorsed the statement as a negotiable instrument and instructed Defendant to settle and close the account. Defendant dishonored the tender, retained the instrument, and instead initiated foreclosure proceeding.

30. Defendant's failure to provide periodic statements reflects a deliberate lack of transparency and bad faith, a direct contravention of Plaintiff's lawful tender of payment, thereby causing Plaintiff harm and further supporting her claims.

31. Under Wisconsin Statute § 423.203 of the Wisconsin Consumer Act, consumers are entitled to cancel a consumer transaction for personal, family, or household purchases, and must receive two copies of a written notice of their right to rescind, as well as any notice under federal law. Defendant failed to provide Plaintiff with either the state-

9

required or federally required notice, thereby violating both state and federal consumer protection laws.

32. On November 25, 2024, and again November 30, 2024, Plaintiff conducted a certified UCC-11 search. Both results showed, **"No Records Found."** Defendant's own loan documents confirmed that the collateral was "free of all liens and encumbrances", evidencing fraudulent conversion of property. (See Exhibits B, C, D.)

33. Defendant misrepresented the mobile home as collateral. For the property to be pledged as collateral, it had to be free and clear of all liens and encumbrances. This confirms the obligation was satisfied prior to Plaintiff being induced to enter the mortgage contract under duress. (See Exhibit D.)

34. The property is held in trust under the principle that all obligations and property are backed by the Full Faith and Credit of the United States. As Beneficiary of the trust, Plaintiff held equitable ownership and the right to enjoy the property. (See Exhibit H.)

35. Defendant never verified or validated any alleged debt claimed against Plaintiff. Plaintiff never owed Defendant a lawful debt in her natural

capacity. Defendant was therefore without lawful authority to foreclose on Plaintiff's property.

36. On **February 1, 2025,** prior to the foreclosure action, Plaintiff filed a UCC-1 Financing Statement with the Wisconsin Department of Financial Institutions, thereby perfecting her security interest and establishing a superior claim to the property. (See Exhibit F)

37. Plaintiff provided Defendant with a copy of her UCC-1 Financing Statement, giving notice of her perfected security interest and superior claim prior to foreclosure.

38. Prior to the foreclosure proceeding, Plaintiff lawfully revoked any claimed Power of Attorney authority held by Defendant and subsequently transmitted her Durable Financial Power of Attorney, Agent Certificate, and License Grantee, followed by an additional revocation to ensure Defendant had full notice. Defendant's continued assertion of control, despite explicit revocation and notice of Plaintiff's lawful documentation, demonstrates willful disregard for Plaintiff's rights and a vindictive intent to foreclose without legal standing or authority. (See *Trinsey v. Pagliaro,* 229 F. Supp. 647, 649 (E.D. Pa. 1964) (jurisdiction authority cannot be presumed or implied)). [^1]

Case 2:25-cv-01603-WED    Filed 10/20/25    Page 11 of 36    Document 1

[^1]: Once Defendant's Power of Attorney authority was revoked, it no longer possessed any legal capacity to act on Plaintiff's behalf. Actions taken without lawful authority are void ab initio and cannot confer jurisdiction on the court.

39. On **June 24, 2025,** Defendant initiated a foreclosure proceeding and purportedly obtained a default judgement against Plaintiff. This judgement is **void,** not merely voidable because the Principal/Legal Fiction associated with the Estate was never served or present at the hearing. See *Trinsey v. Pagliaro,* 229 F. Supp. 647 (E.D. Pa. 1964). (An attorney's submissions or briefs alone are insufficient to confer jurisdiction or authorize a lawful judgement). (See Exhibit G.)

40. Defendant relied improperly on the statements of its attorney, Jack Ebbott, rather than on competent evidence. Attorney Ebbott attempted to substitute his role as advocate for that of a witness, yet he lacked firsthand knowledge of the underlying transaction. Under SCR 20:3.7 and Wis. Stat. § 906.02, an attorney cannot serve as both advocate and witness where personal knowledge is absent, and counsel's representations do not constitute admissible evidence. This defect is magnified by Defendant's failure to produce the original note as required by Wis. Stat. § 910.02 (best evidence rule). Without the original instrument or competent testimony from a witness with actual knowledge, sworn under penalty of perjury, Defendant failed to

12

establish standing or authority to enforce the note or mortgage, rendering the foreclosure unlawful.

41. The unlawful foreclosure culminated in the loss of Plaintiff's home – her castle and place of refuge. As recognized for centuries in Anglo-American law, *"For a man's home is his castle, and in each man's home is his safest refuge"* (Sir Edward Coke, The Institutes of the Laws of England, 1628). This principle, enshrined in the Fourth Amendment's protection against unlawful intrusion and the Fifth Amendment's prohibition on the taking of property without due process and just compensation, underscores the gravity of Defendant's actions. By conspiring to seize Plaintiff's dwelling without lawful standing or jurisdiction, Defendant violated the most fundamental protections owed to citizens in their homes.

42. *"Where there is no jurisdiction there is no judge; the proceeding is as nothing. Such has been the law from the days of the Marshalsea,"* 10 Coke 68; Bradley v. Fisher, 13 Wall 335, 351. Manning v. Ketcham, 58 F. 2d 948.

43. Plaintiff is not a 14th Amendment "Citizen of the United States" but a State National, a status duly corrected and filed on the record. As such, jurisdiction over Plaintiff lies within the constitutional framework reserved to State Nationals, under Article III, Section 2, Clause 2 of

13

the United States Constitution, and not within the ordinary commercial jurisdiction exercised by this Court. Defendant, lacking both standing and lawful authority, intruded upon Plaintiff's secured property rights in violation of the Fourth and Fifth Amendments, resulting in the unlawful dispossession of her home and equitable property rights. (See Exhibit I.)

44. Following the void judgement, Defendant demanded payment exceeding **$37,000.00** as a condition for Plaintiff to retain her home and vehicle. **Article 1, Section 10, Clause 1 of the United States Constitution** provides that no State shall make anything but gold and silver coin a tender in payment of debts, and public policy prohibits a private bank from demanding payment in a specific specie.

45. Plaintiff tendered a certified birth certificate as lawful security, specially endorsed "Pay to the Order of Bank of Deerfield," with her wet-ink signature. The value exceeded Defendant's demand. Defendant nevertheless **retained the security and refused to return Plaintiff's home,** which Defendant continues to list for sale and was recently removed from Lakewood Village mobile home park. Under Wisconsin Statute 430.311 – (1)(a) When a person in good faith tenders an instrument to the claimant there is accord and satisfaction of the claim.

14

46. Defendants' actions constitute **fraud, bank misconduct, embezzlement, and unlawful conversion.** This was not the first instance in which Plaintiff tendered securities to Defendant to settle and close the accounts. (First tender made Dec. 18, 2024).

47. On **July 23, 2025,** Plaintiff filed a Counterclaim for the Sham Legal Proceeding and a Petition for Stay on the grounds of void judgement and lack of due process. Jefferson County Circuit Court disregarded this filing without addressing its merits.

48. On **August 13, 2025,** Plaintiff filed a Petition to Vacate Void Judgement, which was again disregarded by the Court. Following the Petition, Plaintiff submitted a request to the presiding administrative law judge, Bennett J. Brantmeier, seeking verification of his authority to issue such judgement, including his oath of office. Mr. Brantmeier refused to provide any of the items requested.

49. On **August 29, 2025,** Plaintiff exercised her statutory **right of rescission** under **15 U.S.C. § 1635(i)** by written notice identifying material inaccuracies in Defendant's TILA disclosures. Any person who knowingly and willfully violates TILA is subject to civil liability under 15 U.S.C. § 1611.

15

50. Pursuant to **15 U.S.C. § 1635(b),** Defendant was required, within twenty (20) days of receipt of Plaintiff's rescission notice, to return all payments received and cancel the invalid lien on Principal's title, to protect Plaintiff's equitable interest as Beneficiary.

51. Defendant willfully failed to comply with this statutory duty despite knowing the foreclosure judgement was void. Defendant continues to claim a security interest in Plaintiff's property without ever perfecting its own interest or validating a lawful debt. (See Exhibit J.)

52. On **October 4, 2025,** Plaintiff served Defendant with a "Notice of Default, Opportunity to Cure," referencing her prior rescission notice and TILA violations.

53. Defendant's conduct constitutes **fraud, breach of fiduciary duty, and unlawful conversion of Plaintiff's property,** causing financial loss, property loss, intentional emotional distress, and deprivation of Plaintiff's ownership rights. As Beneficiary of the trust res associated with the property, Plaintiff held equitable ownership and right to enjoy the property. Defendant's recording of a mortgage and foreclosure was without lawful authority or standing, as the property's title and all obligations are backed by the Full Faith and Credit of the United States. At no time did Plaintiff, in her natural capacity, owe Defendant

16

a lawful debt, nor was any debt verified. Accordingly, all instruments recorded by Defendant are invalid. Defendant's unlawful foreclosure deprived Plaintiff, her children, and their family pets of their home, rendering them currently homeless. (See Exhibit H.)

54. The property records, like all public instruments, reflect ownership in the name of the Principal/Ens Legis, the all-capitalized legal persona created by the State. This structure arises from the post-1933 framework in which the Ens Legis, not the living individual, was pledged as collateral under the "Full Faith and Credit" system. As a result, the Principal holds bare legal title, while Plaintiff, as the living Beneficiary, retains equitable title and beneficial interest in everything created under that "NAME." Accordingly, any lien or foreclosure against the Principal's title unlawfully impairs the equitable rights of the Beneficiary. (See Exhibit H.)

55. The foregoing facts demonstrate that Defendant's conduct was not the result of mistake or oversight, but a deliberate scheme to misrepresent material terms, dishonor lawful tenders, and unlawfully convert Plaintiff's property. Defendant acted in violation of federal statutes, including the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., and related provisions governing consumer credit and rescission, as well as

17

its fiduciary duties as Trustee of Plaintiff's credit. These actions give rise to the specific causes of action set forth below.

**Causes of Action**

**Count V – Breach of Fiduciary Duty (Wis. Stat. 403.307)**

56. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

57. Defendant failed to disclose that Plaintiff was the true source of value and the entire transaction rested upon her signature which created an asset Defendant could sell or pledge for liquidity.

58. Defendant owed a fiduciary duty to Plaintiff arising from the parties' consumer credit transaction and Defendant's position of trust and superior knowledge.

59. Defendant breached its fiduciary duty by: (a) Failing to disclose the true nature of the transaction; (b) Providing false and inaccurate Truth in Lending Act (TILA) disclosures; (c) Misrepresenting the collateral; (d) Misapplying payments; and (e) Concealing material facts essential to the transaction. (See Exhibit A, E.)

18

60. Defendant further breached its fiduciary duty by failing to disclose securitization of Plaintiff's promissory note, which materially altered the nature of the transaction and Plaintiff's rights. This concealment deprived Plaintiff, as beneficiary, of the opportunity to make informed decisions regarding her equitable interest and standing as a party in interest.

61. This was a private consumer credit transaction subject to the Truth in Lending Act which should have remained in the private domain. Defendant, however, converted the transaction into a commodity for profit, refusing to provide Plaintiff with full accounting showing both sides of the ledger.

62. As a direct and proximate result, Plaintiff suffered financial loss, loss of equitable rights in her property, and emotional distress.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

- Award compensatory and punitive damages for breach of fiduciary duty;
- Order restitution of any payments or benefits obtained by Defendant in violation of fiduciary obligations;
- Enjoin Defendant from further acts violating Plaintiff's rights; and
- Grant such other relief as the Court deems just and proper.

19

**Count VI – Fraudulent Foreclosure / Conversion of Property**

63. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

64. Defendant filed a foreclosure action against the Principal/Ens Legis (the Estate holding bare legal title) while ignoring Plaintiff's equitable title and rights as beneficiary.

65. The foreclosure judgement was void *ab initio* for lack of jurisdiction, as Plaintiff was never properly served. See *Trinsey v. Pagliaro,* 229 F. Supp. 647, 649 (E.D. Pa. 1964) (jurisdiction cannot attach without valid service).

66. Defendant employed a frivolous and fraudulent foreclosure proceeding despite lawful notice of Plaintiff's revocation of its authority and lack of standing, thereby acting without lawful power.

67. By disregarding the trust split and proceeding solely against the Principal, Defendant unlawfully impaired Plaintiff's equitable interest and converted property in violation of law. See Restatement (Third) of Trusts § 2 cmt. d (2003); *Matter of Spencer,* 115 B.R. 471, 475 (D. Del. 1990).

68. Defendant's conduct was willful, malicious, and in bad faith, entitling

Plaintiff to compensatory and punitive damages, rescission of the

foreclosure, and restoration of her property rights.

69. Exhibits B, C, and D specifically show that there were **no liens** on

Plaintiff's property, further proving Defendant's concealment of

material facts.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

- Declare the June 24, 2025, foreclosure judgement void ab in itio for lack
  of service, jurisdiction, and standing;
- Cancel and remove any liens, foreclosure notices, or sale listings on
  Plaintiff's property;
- Award restitution of all payments and consideration taken in connection
  with the foreclosure;
- Grant compensatory, statutory, and punitive damages; and
- Grant such other relief as the Court deems just and proper.

**Count VII – Fraudulent Conversion of Collateral / Securities Fraud**

70. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

71. Prior to the foreclosure, Plaintiff's wet-ink signature and Social Security number were used by Defendant to create a negotiable instrument. The application served as collateral security Defendant pooled and securitized, sold, traded or pledged for Federal Reserve Notes (FRN's), resulting in unjust enrichment to Defendant.

72. Plaintiff attempted to exercise her security interest by applying principal and interest to the account (trust). Defendant refused, in breach of its fiduciary obligations.

73. Defendant owed Plaintiff, as Beneficiary, a duty to act with the utmost good faith and loyalty in all matters relating to the Principal/Ens Legis. Defendant breached that duty by converting Plaintiff's promissory note into a negotiable instrument and pooled it into securitized trust for profit, without Plaintiff's knowledge or consent. At the time of execution, Plaintiff signed the note in blank, believing it to be a standard loan instrument, and was not advised that her signature converted it into bearer paper eligible for securitization. Defendant failed to provide full disclosure of this material fact, thereby depriving

Plaintiff of the opportunity to apply special or restrictive endorsement ("without recourse") that would have prevented securitization.

74. Plaintiff served Defendant with sworn affidavits detailing these allegations. Defendant failed to rebut any point of fact, and by its silence, acquiesced to Plaintiff's statements, which now stand as unrebutted truth.

75. Defendant's conduct constitutes fraudulent conversion and securities fraud, directly impairing Plaintiff's equitable rights and beneficial interest. See *Horace v. LaSalle Bank Nat'l Ass'n,* No. CV-2008-900749 (Ala. Cir. Ct. 2008) (recognizing homeowner as a third-party beneficiary of the Pooling and Servicing Agreement and granting standing to challenge the transaction).

76. Courts recognize that borrowers may be undisclosed third-party beneficiaries of the Pooling and Servicing Agreement (PSA) and may have standing to challenge securitization transactions. See *Horace v. LaSalle Bank Nat'l Ass'n,* No. CV-2008-900749 (Ala. Cir. Ct. 2008) (holding that a homeowner was a third-party beneficiary of the PSA and had standing to challenge the transaction).

23

77. Defendant's conduct constitutes fraudulent conversion and securities fraud, directly impairing Plaintiff's equitable rights and beneficial interest.

78. As a direct and proximate result of Defendant's violations, Plaintiff suffered financial loss, deprivation of her property rights, wrongful foreclosure, and intentional emotional distress, and is entitled equitable relief, rescission, restitution, compensatory and punitive damages, and any other relief the Court deems just.

**WHEREFORE,** having fully set forth her claim for Fraudulent Conversion / Securities Fraud, Plaintiff respectfully prays this Court grant the following relief specific to Count VII:

- Declaration that Defendant's unauthorized securitization, sale, and transfer of Plaintiff's promissory note and collateral security are void and of no legal effect;
- Order Defendant to return all securities, negotiable instruments, and collateral wrongfully converted, including Plaintiff's promissory note and certified birth certificate;
- Award restitution of all payments and consideration obtained by Defendant as a result of the fraudulent conversion;

24

- Award compensatory, statutory, and punitive damages in an amount to be proven at trial; and

- Grant such other relief as the Court deems just and proper.

## Count VIII – Lack of Standing

79. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

80. Plaintiff was never properly served nor present at the foreclosure hearing, rendering the judgement void for lack of due process under both the United States Constitution and the Wisconsin Constitution.

81. Two separate UCC-11 search results revealed no record of any perfected lien or security interest held by Defendant in relation to Plaintiff's property.

82. Prior to the foreclosure hearing, Plaintiff filed a UCC-1 financing statement, thereby establishing a competing and superior claim of record.

83. Plaintiff revoked Defendant's claimed Power of Attorney, thereby terminating any authority to act on Plaintiff's behalf. Despite this revocation, Defendant continued to proceed as though such authority remained in effect.

25

84. Defendant failed to produce the original promissory note or mortgage, instead submitting only a copy. Under Wisconsin's best evidence rule, Wis. Stat. § 910.02, the original writing is required to prove the contents of a note or other negotiable instrument.

85. In absence of the original note, Defendant relied improperly on the statements of its attorney, Jack Ebbott, in place of competent evidence. Attorney Ebbott attempted to act as both advocate and witness, yet he lacked firsthand knowledge of the underlying transaction.

86. Under SCR 20:3.7 and Wis. Stat. § 906.02, an attorney may not serve as both advocate and witness where personal knowledge is lacking, and counsel's arguments are not admissible evidence.

87. Defendant further lacked standing to foreclose, as it cannot establish Holder in Due Course status under U.C.C. § 3-302, as it was the originating party to the instrument and had actual notice of all terms, conditions, and potential defenses. A bank that takes an instrument subject to all claims and defenses under U.C.C. § 3-305 is only a holder, not the holder in due course. Plaintiff obtained two certified UCC-11 search results confirming no lien or encumbrance had been recorded, and Defendant's own loan document acknowledged the collateral was "free of all liens and encumbrances." Plaintiff also filed and perfected a UCC-1 Financing Statement, thereby establishing a

26

superior security interest and priority claim under Article 9 of the
U.C.C. Defendant nonetheless proceeded with foreclosure absent a
perfected lien, constituting fraudulent conversion misrepresentation,
and breach of fiduciary duty.

88. Defendant proceeded with foreclosure absent lawful standing or
authority to enforce the alleged debt, constituting fraudulent
conversion of Plaintiff's property rights, misrepresentation, breach of
fiduciary duty, and unjust enrichment.

89. Accordingly, the default foreclosure judgement is unlawful, void, and
must be vacated.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

- Declare that Defendant lacked standing to foreclose and that any
foreclosure judgement is void ab initio;
- Enjoin Defendant from further collection, foreclosure, or enforcement
actions;
- Award restitution pf all payments, securities, and property wrongfully
converted;
- Award compensatory, statutory, and punitive damages; and
- Grant such other relief as the Court deems just and proper.

27

**Count IX - Violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.** (See Exhibit A.)

90. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

91. Defendant failed to make material disclosures required by TILA and Regulation Z, 15 U.S.C. §§ 1601, 1638, 1639; 12 C.F.R. pt 1026, including but not limited to:

    a. Falsely representing the monthly payment amount;

    b. Misstating the Annual Percentage Rate (APR);

    c. Failing to properly credit Plaintiff's down payment; and

    d. Unlawfully including a ballon payment as final payment without disclosure.

    e. Defendant's actions constitute a statutory violation under 15 U.S.C. § 1611.

92. These false and misleading disclosures materially misrepresented the cost of Plaintiff's credit and deprived her of the ability to make informed financial decisions.

**A. Inaccurate Monthly Payments**

28

93. Defendant represented that Plaintiff's monthly payment obligation was **$372.19.** Independent calculation shows that the correct monthly obligation should have been **$622.33.**

94. The material misrepresentation understated Plaintiff's obligation by **$250.14 per month,** creating the false appearance of affordability and inducing Plaintiff into a contract she would not otherwise have accepted.

## B. Misstated APR – Bank Responsible For Paying Interest

95. Defendant disclosed an APR of **7.478%** on the Truth in Lending disclosure statement.

96. Independent calculation using an online APR calculator, based on the actual loan terms, shows the APR of **25.891%.**

97. This disparity constitutes a material violation of **15 U.S.C. § 1638(a)(4),** which requires the APR to be accurately disclosed to within one-eighth of one percent.

98. The understated APR concealed the true cost of credit, unjustly enriching Defendant by diverting value from the trust and misappropriating funds properly belonging to Plaintiff.

## C. Failure to Credit Down Payment

99. Defendant required and collected a **cash down payment of $10,500.00** when this was a consumer credit transaction based on credit. This payment was not properly credited toward the principal balance or reflected in the Truth in Lending disclosures. Defendant has **$41,179.47** for the total payments made. Had the cash down payment been properly accounted for, the total payments would have been **$51,679.47.**

100. Defendant states that Plaintiff financed **$31,409.00,** when the actual amount financed was **$31,500.00.** When adding the cash down payment to the amount financed, the total is **$41,909.00.**

101. The omission concealed Defendant's double-pledge scheme materially violated **15 U.S.C. § 1638(a)(2)(B),** which requires disclosure of the "amount financed" net of all payments and credits.

102.    This was a consumer credit transaction, and any down payment required should have been included in the finance charge pursuant to **15 U.S.C. § 1605.**

## D. Unlawful Ballon Payment as Final Payment

103.    Defendant's disclosure further reflected a **ballon payment of $18,475.88 as the final payment.** (See Exhibit E)

104.    Under **15 U.S.C. § 1639(e),** ballon payments are unlawful, and their inclusion here renders the loan void as against public policy.

105.    The presence of a ballon payment, coupled with miscalculated monthly payments and the understated APR, demonstrates Defendant's intent to engineer default and foreclosure from inception of the transaction.

106.    Defendant failed to provide Plaintiff with notice of her right to rescind the transaction as required under 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 226.23.

107.    Defendant failed to provide Plaintiff with periodic billing statements as required under 15 U.S.C. § 1637(b), depriving Plaintiff

of her statutory right to receive disclosures of the transactions, balances, and finance charges.

108.    Defendant's failure to provide such statements and notices prevented Plaintiff from verifying the alleged debt, exercising her right of rescission, and protecting her interests, constituting material nondisclosures under TILA.

109.    As a direct  and proximate result of these violations, Plaintiff was wrongfully subjected to foreclosure and suffered financial loss, emotional distress, and impairment of her equitable title. Plaintiff demands judgement against Defendant (Bank of Deerfield) for statutory damages under 15 U.S.C. § 1611, rescission of the mortgage and statutory damages under 15 U.S.C. § 1640(a) for non-compliance, restitution, compensatory and punitive damages, and such other relief as the Court deems just.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

- Rescind the mortgage lien pursuant to 15 U.S.C. § 1635;
- Order restitution of all payments made, including down payments and installments;
- Award statutory damages for TILA violations;
- Award reasonable attorneys' fees and cost of suit; and

32

- Grant such other and further relief as the Court deems just and equitable.

110.    Defendant unlawfully securitized Plaintiff's promissory note without disclosure, failed to perfect any lien or security interest, and nonetheless pursued foreclosure absent standing. Plaintiff tendered lawful payment and settlement on multiple occasions, which Defendant dishonored and retained. Defendant's actions constitute fraudulent conversion, breach of fiduciary duty, and misrepresentation, resulting in unlawful foreclosure and damage to Plaintiff as Beneficiary.

## X. Prayer for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Court enter a judgement in Plaintiff's favor and grant the following relief:

111.    **Declare** the mortgage lien void ab initio pursuant to 15 U.S.C. § 1635, effective as of Plaintiff's rescission notice, and further confirm that any foreclosure judgement obtained on June 24, 2025, is void for lack of proper service, jurisdiction, and standing.

33

112.   **Order** Defendant to release and discharge all claims, liens, and encumbrances against Plaintiff's property, including removal of foreclosure notices, sale listings, and derogatory credit reporting.

113.   **Order** the return of all security instruments tendered by Plaintiff, including but not limited to her birth certificate, promissory note, and any other lawful securities or instruments previously provided to Defendant.

114.   **Order** restitution of all payments made by Plaintiff, including down payments and subsequent installment payments.

115.   **Order** the removal of all negative and derogatory remarks arising from the subject transaction or foreclosure, and pursuant to the Fair Credit reporting Act.

116.   **Award compensatory damages** in an amount to be determined at trial, and pursuant financial loss, destruction of credit and reputation, emotional distress caused by Defendant's fraudulent foreclosure, embezzlement, and conversion of property.

117. **Award statutory damages** as provided under 15 U.S.C. § 1640 for violations of the Truth in Lending Act (TILA) and provided by other applicable federal and state law.

118. **Award punitive damages** for Defendant's knowing, willful, and bad faith conduct, including fraudulent conversion of Plaintiff's property and retention of tendered securities, and to deter Defendant and similarly situated parties from engaging in further unlawful conduct.

119. **Award costs of suit and reasonable attorney's fees to Plaintiff,** acting as attorney-in-fact on behalf of the trust.

120. **Grant such other and further relief** as the Court deems just equitable, and proper, including declaratory and injunctive relief to prevent further unlawful acts by Defendant.

## XI. JURY DEMAND

106. Plaintiff demands trial by jury on all issues triable as a matter of right under the Seventh Amendment to the United States Constitution.

## XII. Verification

I, Michelle-Marie: Hughes, declare under penalty of perjury the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

Date: October 11, 2025

By: Michelle-Marie: Hughes
**Michelle-Marie: Hughes**
**P.O. Box 21**
**Lake Mills, Wisconsin**
**Plaintiff, Sui Juris, Beneficiary**
**Without Recourse, All Rights Reserved**
mmhughes464@gmail.com

**Notary Acknowledgement**

**Notary Public:** _____

Signed by my Hand and Seal on this _11_ day of _October_____, 2025.

My Commission Expires: _8/10/2026_____

OBDULIA CARRILLO
NOTARY
PUBLIC
STATE OF WISCONSIN

**Certificate of Service**

I, Michelle-Marie: Hughes, hereby certify that on this _14th_ day of _October_____, 2025, I caused true and correct copies of the foregoing complaint and exhibits to be sent via **Certified Mail No.** 9589071052700019617012 __ to: The United States Eastern District Court.

36